20-5526, Sarah Davis v. Metro Parks and Recreation Dept. at all, not to exceed 15 minutes per side. Ms. Holland, you may proceed for the appellant. Thank you so much. I would like to reserve three minutes for rebuttal, please. All right. First, I want to thank the panel for allowing us to appear via Zoom during this pandemic, and I hope everyone, and my opposing counsel, I hope everyone is safe during this time. Thank you. I am Maureen Holland, along with Abby Rubenfeld and Yvette Kirk. We represent Sally Davis, who is the appellant in the current case. Sally Davis, at the time that she experienced discrimination, was a 35-year employee for Metro. She had spent the vast majority of her She was exceptionally deserving of an advancement. She applies for an assistant director position that at the time was unusually merged with another assistant director position, and she is the first candidate, and she should have received the sort of more prestigious assistant director position, which was in the area of primarily of the Gulf and Gulf Services. And instead, that position was given to a male who was less qualified, and she was instead put into the position of assistant director for community programs. Ms. Holland? Yes, sir. We read your briefs. Thank you. Can I ask a question? What in your mind does occurred relatively frequently mean, the language from the Supreme Court? In the context of retaliatory harassment, the standard is the Burlington Northern standard, and it has to deter an employee, reasonable deter an employee from filing. I agree with that, that Burlington Northern applies, and I know there's a split in the circuits on whether to apply that to retaliatory harassment, but I guess my question's a little different. I'm sorry for not asking it well, which is, so you have what I would call a group of events, and some are right after she filed her claim, and then some are three years later in 2016, okay, the kind of major events you highlight in your brief. And so under the legal or factual question, that's a separate question I have, is what does occur, how do we determine whether something occurred repeatedly, relatively frequently? I'm sorry. Does that make sense? Well, if you're, if you're, well, first I would say that if, if we're talking, we have to look at every event and decide, are each of these events occurrences, so that those occurrences now have to happen often enough, or do we look at each event and say these, this collection of events is the occurrence, is the practice that we're focusing on, that would be two different ways of looking at the sequence of facts. Well, I agree with that, and Justice Thomas highlights that in Morgan, but I guess my question is, is are they all part of the same claim? Yes, and the reason we had asserted that they're, they're connected is because of the standard of review, which is you have to show that there is a but-for connection, not the but-for connection. So if the analysis is, you have to show me that the, that, that the, there was a protected activity and there was a complaint about it, and everything is the, stems only from that, that has to be the sole reason these things are all connected, that's a standard, but we would submit that that is not the standard of review under NASR, that is a review, and so as long as you show the connection, that would be the important thing. So if, let me give you a hypothetical that's not your case, if there's three or four acts right after someone files a claim, then there's a 10-year gap, then there's one more event, and they file a hostile, a retaliatory hostile work environment claim, are those first four related to the fifth, and is that by law you're asserting or by fact? As I understand the law, there are two things that happen with temporal proximity. One, if it's close in time, there's an inference in your favor that they're connected, but that's not the only basis upon which the court can make its analysis, it can look at other factors that show the connection. For example, if 10 years later... Okay, hold on, Collin, can you just please give an answer to my question, then you can explain. Four right after, just like yours, one 11 years or 10 years plus later, is the first part of the same claim, and is that a legal question we ask or a factual one? So I have two questions. I would submit that it's a factual one, because if there are facts to support that they're connected, including someone saying, I'm doing this because of what happened 10 years ago, then that would be a factual inquiry. That it's not simply a pure legal analysis where a judge can say, I hereby decide, this is our position, I hereby decide that because of this timeframe, you're out. So what are your facts supporting Odom being her boss and the transfer of the assistant back to the complaint of discrimination? I would submit two things. One, you said three years, but in fact, she had gone back to the HR nine months prior to the Odom event. So it's not just three years ago that there was one thing that happened. She'd gone to HR three times in that time period, the last one being nine months before. So it's not a three-year break. The next thing is that there's a sequence of events going on that collectively show that she's being treated differently after she complained, after she goes to HR than prior, and the Odom event is a materially adverse event, even by the admission of the opposing party, where they reference, and we referenced this on page 15. So it's materially adverse, and our client experiences this as essentially a demotion and no one else is treated this way, especially at her level of position. And there could be a reasonable inference, which is a factual determination by a jury as to the degree to which this is connected to the prior event. Looked at it in a vacuum, here's one thing that happened, then that's an analysis that the court did, but we submit is incorrect because there are a series and sequence of events after Ms. Davis goes to HR in July of 2015. And that sequence of events begins the continued different treatment that she experiences, the negative treatment that she experiences, that dissuades her, that she says, for me, is it? Don't you allege that the original sex-based discrimination claim was in June of 2013? There was an original claim in 2013, and she goes in 2013 and complains to HR and says, this, I'm being retaliated against after having filed my claim in 2013. And what law do you have that says a year, two, three years later, that that's still a proximate causation? I thought that we have cases that say, look, even several months later breaks the causal connection. It's the inference of causal connection, not the actual causal connection. There can be additional facts that support that there is a and what the plaintiff is claiming is retaliatory harassment. And that that is looked at under the Burlington Northern Standard and is not as severe a standard, not as high a hurdle, if you're looking at overall discrimination, for instance, that retaliatory harassment is a much lower bar for a plaintiff to meet. And they need only explain these are the kinds of things that if you look at under a discrimination standard might not be serious and significant. But for me, as a person who went through that process, the plaintiff need to explain that I am experiencing these things in a way that deters me from filing, hence the Burlington Northern Standard. Hence, we put in our brief regarding the EEOC's analysis of that Burlington Northern Standard and how it's a much lower bar. For a hostile work claim, though, don't you have to show that the harassment is, quote, severe and pervasive? That standard is different when it's a retaliatory harassment case versus a discrimination hostile work environment claim. On page 34 of the brief, we speak to the EEOC enforcement guidelines talking about what does this mean in terms of retaliatory harassment and this threshold. And there the EEOC is speaking that retaliatory harassment conduct can be challenged under the Burlington Northern Standard, even if it is not severe or pervasive enough to alter the terms and conditions of employment. So the standard is very different if it's a retaliatory harassment case versus a discrimination hostile work environment case. And those things being significant here, because I believe you're correct that the trial court analyzed this, looking at extreme, that was the court's language, extreme conduct, which would be but when looking at a retaliatory harassment case as here, the bar is much lower according to the Supreme Court in Burlington Northern. Now your client eventually, what, retired? Sir, yes. Did she retire well after she became eligible for retirement? She was trying to get actually to 40 years of work time because of all the events that and because she was experiencing the anguish and anxiety that was going on because of this. That was supported by Mr. Benson's declaration, which is here that the court disregarded. In fact, the court said the removal of your assistant, that doesn't count. Being demoted by, essentially being effectively demoted, that doesn't count. Going through all these events, reprimands, they don't count. And if they do count, we're going to keep them as separate incidences and we're going to just say they're not connected. Even though we've shown that they show a pattern of behavior against our client that was very dismissive, negative, harmful, and destructive. Didn't your client continue to get pay raises? I believe that our client got the normal rate of pay for her job, but that doesn't mean that she wasn't experiencing negative experiences in the job, which she attested to. And Benson also said he observed. I noticed my time is up, sir. I'll answer any questions you have. All right. We'll hear from your opposing counsel. Yes, sir. Thank you. Thank you. You may proceed. Good morning, Your Honor. Melissa Roberge on behalf of the Metropolitan Government. Plaintiff's attempt to turn her workplace stress and annoyances into actionable retaliation failed. The undisputed material facts show that plaintiff has asserted discrete discriminatory acts and that the majority of those acts are time barred. For those that are not time barred, the extreme length of time and accompanying unrebutted rationale- Do you concede they're not time barred for a hostile work environment retaliation claim? I would agree that they would not be time barred for a retaliatory harassment claim, but that's not actually what Ms. Davis has alleged. As the Supreme Court noted in Morgan, that is a claim that she has brought, but it would be more properly analyzed as discrete acts of discrimination. As the Supreme Court noted in Morgan, discrete acts are easy to identify. Termination, failure to promote, denial of- But why doesn't she, her complaint says she brought a hostile environment claim and the district court determined whether she brought the granted summary judgment on her hostile environment claim, retaliatory I should say. So why can't we consider that? And so why can't we consider the totality of the events? Your Honor, the district court determined that while she did bring a retaliatory harassment claim, that it was more akin to discrete acts of retaliation. But even considering them in the totality, the frequency was not enough to establish that it was severe and pervasive. Why is that? So go back to my example, four events right after one event 11 years later, could they bring it? Your Honor, unless there is a causal link between the events that occurred immediately after and the ones that occurred 10 years after, there would not be. There would not even be an inference of a causal link. So I think Justice O'Connor disagrees with you. And she said so in Morgan. She said under the majority's test, you could bring my exact hypothetical. The Supreme Court in green, Justice Sotomayor gave two examples when analyzing a constructive discharge claim. It said that on days one through 400, the events were untolerable such that it made a plaintiff resign. All 400 days could be considered. But if events occurred on days through one through 100, and then another event on date 401, absent something drawing those two together, the actions from dates one through 100 would be barred. So that comes from Morgan, not green. And that's Justice Thomas's example. Right. And I thought he said you could. He said that it was at least possible. But again, you would have to establish that causal link, which the district court properly found has not been done here. Supervision by Miss Odom. Importantly, at the time it occurred, Miss Davis welcomed the change. While she now attempts to cast it as a demotion, it doesn't bear any of the hallmarks. That would be a factual question for the jury. But let me ask you this. It says, so I agree with you. He says, Justice Thomas says, on the other hand, if the if an act on 401 had no relation to the acts between days one to 100. And how do we know they have no relation? She's alleging they do. She's alleging all these acts occur because of her discrimination complaint. She says, I was periodically making this discrimination complaint and I was treated differently. And here's all my examples, some of which the district court said were independently severe enough. Plaintiff's allegations or beliefs about a causal requirement does not meet her summary judgment burden of having to produce facts that they are causally related. OK, so let me give you a scenario. The first four events she complains of are correct. OK, undisputed. Why isn't that evidence of causation? Of the later events. So she needs to explain the later event. She says, look, Lynch has been mean to me ever since I filed this claim. So as an initial point, a supervisor being, quote, unquote, mean, pervasive. Nonetheless, he's been mean enough that it would dissuade a reasonable person from filing a claim. Your Honor, plaintiff testified that the year of 2014 was a relatively good year for her. She didn't recall any interactions with Director Lynch that she considered retaliatory. She did receive a reprimand that year, but her own testimony was that 2014 was a relatively quiet year. That relatively quiet year breaks the causal link. Well, that can't be right because the Supreme Court says you can have it. And Justice O'Connor says 11 years later, you can have nothing happen and it can be related to the initial conduct. So what you're saying is if a if a harasser harasses you for a year, you put up with it because the company says they're going to do something. Then the harasser is quiet for a year for whatever reason. If he shows up again and starts harassing you, it's not related. That can't be. For purposes of a discreet acts claim such that you could use the violation doctrine, it's not related. For purposes of a retaliatory harassment claim, again, the court has held that for those claims, you can consider the totality. But here, when considering the totality, it's not severe and pervasive. This court held in... Do you disagree with the EEOC standard and Burlington Northern standard? I agree that the Burlington Northern standard applies to discreet acts of discrimination, but I'm unaware of any case from this circuit that holds that the standard for retaliatory harassment is not severe and pervasive. So one more question. I'll be quiet then. I'm not sure I follow that. So Burlington Northern and Morgan, the way I understand them is they say basically a hostile work environment is one claim and all the acts are just part and parcel of that claim. Okay. And they say retaliation is one claim, right? And so now you have a retaliatory... And I agree with you. There's no case from this circuit. I've looked. Retaliatory hostile work environment. It seems to me it's just a retaliation claim of a different color. Why wouldn't we apply Burlington Northern? And you agree, I'm sure, that other circuits do because I've got them sitting in front of me. I do agree, Your Honor. Again, this court has never held that the standard isn't severe and pervasive. And there is a long line of cases in the retaliatory harassment context where this court has applied the severe and pervasive standard. Don't they predate the cases you cite in footnote five predate Burlington Northern? They do, Your Honor. Okay. Do you have any post Burlington Northern? I do not, Your Honor. Okay. Go ahead. I'm sorry. I appreciate the questions. It makes it easier. With regard to the supervision of Ms. Odom, again, this doesn't bear any of the hallmarks of a demotion. Ms. Davis welcomed that change. There have been no facts that the district court properly found that link Ms. Odom's supervision to any complaints by the plaintiff. Ms. Odom supervised all of the assistant directors. In the email that Director Lynch sent informing Ms. Davis of this change, he specifically said that she would be the first, but she would not be the last. Ms. Odom testified that she did not recall an extended period of time lapsing between when she began to supervise Ms. Davis and when she supervised the other directors. Additionally, there is an email in the record in which Tommy Lynch informs all of the assistant directors that approval for staffing changes must have both his sign-off and Monique Odom's sign-off. The appointment of Ms. Odom as a supervisor was not targeted at the plaintiff. Additionally, the transfer of Mr. Benson was not adverse and not causally related to the filing of discrimination. Importantly, Ms. Davis testified that when she moved over to Community Rec, she asked that Mr. Benson be moved with her. So, when Ms. Davis got her promotion, when Ms. Davis was filing her sex discrimination claim, Mr. Benson was housed in special services or the golf arena. At plaintiff's request, Director Lynch moved Mr. Benson. Monique Odom testified that she thought that should never have been allowed. She further testified that she would be moving Mr. Benson back. Director Lynch decided to take that step early for Ms. Odom and moved Mr. Benson prior to that. In this context, that is not an adverse action. It is a matter of timing and not a matter of retaliation. Your Honor asked the question about frequency with regards to a retaliatory harassment claim. I would refer the court to Clay v. United Parcel Service, where this court almost 15 years ago decided that 15 incidents over two years was not sufficiently severe and pervasive. If my math is correct, that would be essentially an occurrence every other month. Here, there's substantially more time. There's less events. Can you give me a site for that? I'm sorry. Your Honor, I apologize. I did not write the site down for that. It is Clay v. United Parcel Service. Okay. Thank you. And the incidents complained of there were hypercritical supervisor. Was it published? Sorry. I believe it was published, Your Honor. Thank you. It is cited in our brief. Incidents were a hypercritical supervisor who didn't criticize the plaintiff's co-workers and made false accusations about the plaintiff. The court held again that that was not severe and pervasive. Additionally, the Western District of Tennessee in Blackburn v. Shelby County, relying on a long line of precedent from this court, Diamond v. Postal Service being one, found that a supervisor who yelled at the plaintiff, selectively enforced policies, unjustly chastised the plaintiff, and refused to meet with the plaintiff was also not severe and pervasive. It noted that these incidents occurred over 18 months with no effect on her employment. And here, there was no effect on Ms. Davis' employment. As Your Honor noted, she received pay raises with her pay increasing almost $23,000. Additionally, Ms. Davis voluntarily retired. She testified that she found herself with the financial resources. Can I ask you one more question? I'm sorry to go back to my original question, but I just thought of something on the Burlington Northern question. Didn't the district court and both of you below cite the Burlington Northern standard? In essence, the language might dissuade someone from filing a claim. That is the Burlington Northern language. That is the Burlington Northern standard, and we cited it for the discrete acts of retaliation claim. Okay, thank you. But to that point, Your Honor, plaintiff relies on both Lassiter and then Ford to establish a retaliatory harassing environment. Those cases are both discrete acts of discrimination case that apply the Burlington Northern standard, and both are factually distinguishable from our case. First, in Lassiter, the actions impacted the plaintiff's job growth by being denied training opportunities. He was actually suspended and perhaps most egregiously was the subject of a bad-faith investigation. The district court properly distinguished that case from our case. Here, there's nothing alleged to have affected plaintiff's job growth. She wasn't actually suspended, and there were no bad-faith investigations. Ford, similarly, was a constructive discharge case, so where the increased workload, increased scrutiny, 30 years of unblemished service, and the threat of losing a very lucrative pension, the court held that that all equals a materially adverse act. Again, here, there are no allegations or there are no facts that Miss Davis wasn't doing her job well, that she wasn't well respected by her peers, or that there was any effect on her job performance. The allegations here are the types of workplace annoyances and trivial parts of a workplace that this court has routinely held do not make up a retaliatory harassment claim. Miss Davis's lawsuit ultimately rests on the fallacy that filing a discrimination complaint insulates you for the duration of your career. The undisputed facts compel one conclusion, that regardless of what theory plaintiff travels under, discreet acts of retaliation, retaliatory harassment, the district court's decision granting the metropolitan government summary judgment should be upheld. If there are no further questions, we would ask that you affirm the district court. All right, thank you. We'll hear rebuttal at this time. Thank you so much. There is a significant impact on Miss Davis's experience on the job. This is her words. I couldn't even imagine sitting in federal court. It's not me, but I couldn't let it go. I just think that it's disgusting the way that he acted. It ruined my last four years. My years of park were some of the best years I've ever spent in my life. I loved my job. I loved the department. I loved the people, but this destroyed the last four years of my work at parks, four and a half years. It is not that it had no impact. Mr. Benson, her assistant, in his affidavit, which the trial court disregarded, speaks to the impact that the retaliation, and he uses that word, that the retaliation by Lynch, by the director Lynch, had on plaintiff. I also want to mention that there is some internal inconsistencies in the court's order in that the court, and its original order on page 14, says that the comments in Mr. Benson's affidavit, it says, could imply the possibility that Mr. Lynch had a vendetta, but in the order, the judge says there is not enough evidence to show that there was retaliation, so that I think we would submit that the affidavit is sufficient for that. In terms of a quick response to the court, the court asked about the standard for, and I'm looking, sorry, I moved the this is to the court's question. On page 36 of our brief, we say, there's no single factor that is dispositive in establishing a causal connection, but evidence that the defendant treated the plaintiff differently from similarly situated employees, or the adverse action was taken shortly after the plaintiff's exercise of a protected right is relevant. To establish the evidence from which one could draw the inference, this is looking at the Avery case out of the Sixth Circuit, 1997. So temporal proximity is not the only factor. It is a matter of fact, this was a summary judgment issue. This is not after a jury has looked at everything and come to a conclusion. This is the judge deciding on his own that these facts are in the judge's opinion. They don't connect, and we submit that they do connect, that this case should be remanded for trial. Thank you so much for your time. Well, thank you, and the arguments haven't been completed. The case may be submitted.